## McRae v. State.

CRIMINAL PRACTICE:  *Refusal of court to receive verdict.*

On the trial of an indictment for grand larceny, the offense having been committed, as shown by the testimony, more than twelve months before the finding of the indictment, the jury offered to return a verdict convicting the defendant of petit larceny, and the court, conceiving that they did not understand that their verdict was equivalent to an acquittal, refused to receive it, and after charging the jury over again, directed them to reconsider; and on their failure to agree on any verdict, discharged them.  The defendant then moved for his discharge, on the ground that he had been acquitted of the felony and the prosecution of the misdemeanor was barred.  But his motion was denied, and he was tried before another jury, and convicted of grand larceny.  *Held:*  That it was not error to deny the defendant's motion for discharge, and that the judgment rendered on his conviction of grand larceny is valid.

APPEAL from *White* Circuit Court.
M. T. SANDERS, Judge.

*T. J. Oliphint* for appellant.

The court had no right to refuse to receive the verdict, if in form.  It acquitted the prisoner of the higher offense.  *2 Johnson Rep., 182.*

As to when the court may refuse to receive the verdict, and for what cause, see *Whart. Cr. Law, 7th ed., sec. 3198; 19 Cal., 426; 2 Ala., 745; 13 Miss., 295; 11 Iredell, 153; 3 Bish. Cr. Pro., sec. 1004; 20 Cent. Law Journ., 149.*

Under these decisions the court should receive and record the verdict, if responsive to the issue and in form.

*Dan W. Jones*, Attorney General, for appellee.

The court had absolute control of the jury and their verdict until they were discharged.  *19 Ark., 476; 32 id., 585; 29 id., 165.*

CRIMINAL PRACTICE: Refusal to receive verdict.

SMITH, J.   McRae was tried upon an indictment for grand larceny, and the jury offered to return a verdict of guilty of petit larceny.   The testimony showed that the offense had been committed more than twelve months before the finding of the indictment, and the court, conceiving that the jury did not understand that their verdict was equivalent to an acquittal, refused to accept the verdict, charged the jury over again, and directed them to reconsider.   They afterwards reported that they were unable to agree upon any verdict; whereupon they were discharged from the further consideration of the case, and a mistrial was entered.

McRae then moved for his discharge, alleging that he had been acquitted of the felony, and the prosecution of the misdemeanor was barred by lapse of time.   But his motion was denied; another jury was empanneled, and he was convicted of grand larceny and sentenced to the penitentiary.   The question for determination is, whether or not the judgment pronounced nnder these circumstances can be sustained.

The English courts have always exercised a very large authority in matters of this sort.   A single case will illustrate their practice.   *Regina v. Meany, Leigh & Cave's Crown Cases, 213*, decided in 1862, was a prosecution for obtaining money and goods by false pretenses.   The facts having been left to the jury, the foreman said:   "We find the prisoner guilty of obtaining the property by false representations in the two forged letters, and that the parties would not have parted with it without those letters had been used; but we think that he meant to pay for them."   The Judge refused to receive this as a verdict, telling the jury that they must find the prisoner guilty or not guilty; and that if, in their opinion, he had not a fraudulent intention, they must say it by a verdict of not guilty.   After a consultation they found a verdict of "guilty."   Before passing sentence, the matter was referred to the judgment of the Court of Criminal Appeals.   Counsel for the prisoner con-

tended that the first verdict should have been recorded. POL-LOCK, C. B., said: "That point is utterly unarguable. A judge has a right, and in some cases it is his bounden duty, whether in a civil or in a criminal cause, to tell the jury to reconsider their verdict. He is not bound to receive their verdict, unless they insist upon his doing so; and where they reconsider their verdict and alter it, the second, and not the first, is really the verdict of ths jury."

In *Blakeley v. Sheldon, 7 Johnson, 32*, it is said: "The law is well settled that before a verdict is recorded the jury may vary from the first offer of their verdict, and the verdict which is recorded shall stand; and there are many cases in the books of a jury changing their verdict, immediateiy after they have pronounced it in open court, and before it was received and entered. (*Dyer, 204b; Plowd., 209; Saunders v. Freeman, Co. Litt., 227b.*) The verdict is not recognized as valid and final until it be pronounced and recorded in open court; and it is reasonable that the jury should be enabled to avail themselves of the *locus pœnitentiæ*, and correct a verdict which they have mistaken, or about which, upon further reflection, they have doubt. * * * The court may also of its own accord send the jury back to reconsider their verdict, if it appears to be a mistaken one, before it is received and recorded. We have an instance of this in *II Hen. IV, 2 pl., 3.* It was in a case of a writ of conspiracy against two, and the jury found one guilty, and the other not guilty. And TIRWIT, J., told the jury that their verdict was contradictory, and that if one be not guilty, the other was not guilty, in a charge of conspiracy, and that they had better reconsider their verdict; and the jury were accordingly taken back, and afterwards returned and found both guilty."

This doctrine, however, has its limitations where, as with us, judges are forbidden to charge juries with regard to matters of fact. The presiding judge has no power to control the jury

in their findings, nor to refuse to permit a verdict to be recorded, merely because he is dissatisfied with it, and thinks the jury ought to have come to a different conclusion. *State v. Shele, 10 Iredell's Law, 153; Dougherty v. Shown, 1 Heiskell, 302; Henslie v. State, 3 id., 202.*

But all the cases concur that the jury have full power over their verdict, and may amend it, or recede from it, at any time before it has been received and recorded, and themselves have been discharged from the case. *Straughan v. State, 16 Ark., 37; State v. Mills, 19 id., 476; Levells v. State, 32 id., 585; Root v. Sherwood, 6 Johns., 68; S. C. 5 Amer. Dec., 191; Warner v. N. Y. C. R. Co., 52 N. Y., 437; S. C. 11 Amer. Rep., 724; Walters v. Jenkins, 16 Serg. & R., 414; State v. Underwood, 2 Ala., 744; Sargent v. State, 11 Ohio, 472; People v. Bonney, 19 Cal.. 426; Gipson v. State, 38 Miss., 295.*

*Ward v. Baily, 23 Me., 316,* was a writ of entry. The jury returned a verdict that the defendant did not disseize the demandant. Another action for trial between other parties was called, and the writ was read to the same jury, when the counsel for demandant in the first case suggested to the court that he apprehended the jury had by some mistake returned a different verdict from what they had intended. The judge then informed the jury of the legal effect of their finding; and the foreman stated that they had found the location of a monument in controversy as contended for by the demandant. The Judge then directed the papers in the case to be delivered back to the jury, the counsel for the tenant objecting. The jury consulted together, and returned a verdict that the tenant did disseize the demandant; and this verdict was thereupon affirmed in the place of the other. On exceptions filed the Supreme Court said: " It is true their verdict had been received and entered on the docket. But it appeared, on questioning the foreman, that they had misconceived the meaning of the terms used in their verdict. They were thereupon permitted to correct the

mistake." So the exceptions were overruled, and judgment entered on the last verdict.

It is plain that the jury did not intend to acquit McRae; for when they were advised of the legal consequences of their verdict, some of them dissented from it. Perhaps the more orderly course would have been for the court to explain to the jury that the verdict, which they proposed to render, amounted to an acquittal; and then to cause the jury to be polled. If all adhered to it, the verdict should have been received. But if one or more dissented, the jury should have been sent back for further deliberation.

However, the course actually pursued was in substance the same as that herein indicated as the correct practice.

Judgment affirmed.